UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Cornelius Keith, #115876, | ) | C/A No. 4:09-1865-MBS-TER |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| v. | ) | |
| | ) | |
| Robert Stevenson, Warden Broad River, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Cornelius Keith ("Petitioner/Keith"), a *pro se* prisoner, seeks habeas relief pursuant to 28 U.S.C. §2254.[1] This matter is before the Court on the Respondent's motion for summary judgment (document # 13).

The Petitioner filed this petition for a writ of habeas corpus on July 16, 2009. On October 8, 2009, the Respondent filed a motion for summary judgment, along with supporting memorandum and exhibits. The undersigned issued an Order filed October 9, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response in opposition (doc.#18).

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

# I.  HISTORY

## a. Facts

     For background purposes only, the undersigned will set out the facts of the case as set forth

by the South Carolina Court of Appeals in the unpublished opinion, <u>State v. Keith</u>, Op. No. 2006-

UP-301 (S.C. Ct. App. Filed June 30, 2006).

> On June 13, 2003, three days after her husband's suicide, [A][2] received a phone call from a man who identified himself as "Mr. Pinckney." The caller, later identified as Keith, told [A] he knew her husband and referred to her husband's family members by name. Keith further informed [A] that her husband had helped him out when he was in trouble, and now he wanted to provide financial support for her.
>
> Keith asked [A] to come to his home in Sumter so that she could meet his family and be presented with a check. Keith told [A] that he waned to give her some financial help after her husband's death. [A] went to Sumter, and after calling Keith from a convenient store as he had requested, she was invited to come across the street to his apartment. [A] drove over to Keith's apartment and observed him standing in his doorway waving to her.
>
> [A] entered the apartment and stood by the open door. Keith immediately began walking in and out of rooms in the apartment as he asked the victim questions regarding her knowledge of other local families. [A] could hear Keith opening and closing drawers in another room, and she walked away from the open door into the apartment in an attempt to see him. When [A] turned back around to face the open door, she observed Keith close and lock the door. [A] immediately announced, "I'm out of here," rushed to the door which she unlocked and opened, and exited the apartment.
>
> Keith never threatened [A] or told her she could not leave. [A] admitted that Keith was close enough to grab her when she was opening the door and exiting the apartment, but he never attempted to grab her or hinder her ability to leave. Keith never made any physical contact with [A], and after she exited the apartment, he stood in the doorway and told her he would call her later.
>
> [A] drove to the police station and reported what had happened. The police provided [A] with a photo line-up and she picked out Keith as the man she had just seen. The

---

[2] The name of the victim was redacted from the transcript. Therefore, "A" will be used in place of the name.

police then drove to Keith's apartment and placed him under arrest.

After transporting Keith to the police station, the police attained a search warrant for his apartment. The police executed the warrant and found a notebook in a dresser drawer. In the notebook were written entries containing names and ages of deceased men and contact information for their family members. The police were later able to match the information in the notebook with newspaper obituaries found in Keith's apartment which contained the same information. Additionally, the police found a newspaper in the trash that contained the victim's husband's obituary.

At trial, the State produced two witnesses to testify regarding phone calls they had received from a man who identified himself as "Mr. Pinckney." At the time of the phone calls, both witnesses were recently widowed, and they were each listed in entries written in the notebook found in Keith's apartment. The two women testified that the caller told them he knew their husbands and that he wanted to help them financially. Neither woman ever agreed to the caller's request to meet nor did they ever receive a check from him.

A Sumter County grand jury indicted Keith on a single count of statutory kidnapping by inveiglement or decoy. After trial, the jury convicted Keith of kidnapping, and the trial court sentenced him to ten years imprisonment.

Id.

**b. Procedural History**

The procedural history as set out by the Respondent has not been seriously disputed by the Petitioner. Therefore, the undisputed procedural history as stated by the Respondent is set forth herein.

Petitioner is currently confined at the Broad River Correctional Institution in the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Sumter County. Petitioner was indicted by the Sumter County Grand Jury during the February 2004 Term of the Court of General Sessions for Kidnapping (2004-GS-43-762). Petitioner was represented by Arthur Wilder, Esquire, Public Defender for Sumter County. (App. 1-379). The State was represented by Assistant Solicitor Catherine Fant, Esquire, of the Third Judicial Circuit. (Id.). On

April 27-28, 2004, Petitioner was tried by a jury and was convicted for Kidnapping. The Honorable

Howard P. King, Circuit Court Judge sentenced Petitioner to ten (10) years confinement. (Tr. 375).

Petitioner timely filed a Notice of Appeal on April 29, 2004. On appeal, Petitioner was

represented by Robert M. Dudek, Esquire, Assistant Appellate Defender with the South Carolina

Office of Appellate Defense. Petitioner's direct appeal was perfected with the filing of a Final Brief

of Appellant. In the Final Brief, Petitioner asserted the following two arguments:

> 1.      Whether the court erred by refusing to direct the verdict of acquittal
> on the charge of kidnapping where there was no direct or substantial
> circumstantial evidence appellant committed that offense where there
> was not any evidence appellant did anything illegal by having the
> witness come to his home or meet him, he never touched the
> complaining witness, who voluntarily came to his home, and there
> was no evidence appellant committed a crime in this case?

> 2.       Whether the court erred by allowing the testimony of Shirley Smith
> and Cynthia Richardson that some man had telephone them after
> there husband's death, used the name Mr. Pinckney, and stated he
> had a check for them, since neither witness ever met the caller, and
> this was not sufficient evidence of a common scheme or plan under
> State v. Lyle, or under Rule 404(b), SCRE, and this testimony and the
> corroborating evidence seized from appellant's home also should
> have been excluded under Rule 403, SCRE even if this evidence was
> otherwise admissible?

(Final Brief of Appellant).

In an Unpublished Opinion filed June 30, 2006, the South Carolina Court of Appeals

affirmed Petitioner's conviction.  On July 17, 2006, Petitioner filed a pro se Petition for Rehearing.

The State filed its Return to the Petition for Rehearing on September 15, 2006. The South Carolina

Court of Appeals filed an Order Denying Petition for Rehearing on December 15, 2006. In the

Order, the South Carolina Court of Appeals noted that after a careful consideration of the Petition

for Rehearing, the Court was unable to discover that any material fact or principle of law had been either overlooked or disregarded and,hence, there was no basis for granting a rehearing. It was, therefore, ordered that the Petition for Rehearing be denied. The Remittitur was issued on January 31, 2007.

Petitioner filed an Application for Post-Conviction Relief (PCR) on February 26, 2007 (2007-CP- 43-427), alleging ineffective assistance of counsel, trial court erred by not directing a verdict, trial court erred by not instructing jury on lesser offense, and trial court did not advise about two years community supervision. (Tr. 380-90). Specifically, Petitioner asserted trial counsel was "ineffective for not motioning for a directed verdict of acquittal because the state had not proved the applicant did anything illegal in this case. The Applicant's lawyer was also ineffective in regards to not investigating the details of the arrest of the applicant, and the search of the applicant's home failed to move for a directed verdict of acquittal" (Tr. 385). The State filed its Return on July 17, 2007. (App. 391-94; Attachment No. 11).

An evidentiary hearing was held in this matter on December 13, 2007, before the Honorable George C. James, Jr., Circuit Court Judge. (Tr. 395-411). Petitioner was present and was represented by David F. Sullivan, Esquire. (Id.). Assistant Attorney General Lance S. Boozer, Esquire, represented the State. (Id.). Petitioner and Petitioner's former trial counsel, Arthur H. Wilder, Jr., Esquire testified at the PCR evidentiary hearing. In an Order filed January 23, 2008, the PCR Court denied Petitioner's Application for Post-Conviction Relief. (Tr. 412-417).

Petitioner timely filed a Notice of Appeal to the PCR Court's Order on January 29, 2008. On appeal, Petitioner was represented by Elizabeth A. Franklin-Best, Esquire, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. Petitioner's

appeal was perfected with the filing of a <u>Johnson</u> Petition for Writ of Certiorari. In the <u>Johnson</u>

Petition for Writ of Certiorari, counsel asserted one issue as follows:

> Was trial counsel ineffective for failing to ask the trial court judge to reconsider Petitioner's sentence of ten (10) years incarceration in a kidnapping case, when the victim was never held against her will, and was always free to leave the premises?

(<u>Johnson</u> petition).

In the brief, Petitioner also argued that the judge's sentence amounted to an abuse of

discretion, and trial counsel should have asked for sentence reconsideration, and it was error for the

PCR judge to find that Petitioner received effective assistance of counsel. (<u>Id</u>.). Petitioner's counsel

asserted that the petition was without merit and requested permission to withdraw from further

representation. Petitioner did not file a pro se response to the <u>Johnson</u> Petition for Writ of Certiorari.

In an Order filed April 10, 2009, the South Carolina Supreme Court denied Petitioner's

<u>Johnson</u> Petition for Writ of Certiorari. In the Order, the Supreme Court noted this matter was before

the Court on a petition for a writ of certiorari following the denial of Petitioner's application for post-

conviction relief and Petitioner had not filed a pro se petition.

After consideration of the record as required by <u>Johnson v. State</u>, 294 S.C. 310, 364 S.E.2d

201 (1988), the South Carolina Supreme Court denied the petition and granted counsel's request to

withdraw. The Remittitur was issued on April 29, 2009.

## II. HABEAS ALLEGATIONS

Petitioner filed his petition on July 16, 2009, in which Petitioner raises the following

allegations, quoted verbatim:

Ground One:        The Trial Court Erred in admitting evidence of prior bad acts

in violation of Rules 403 and 404(b) SCRE

Supporting Facts: The state presented two witnesses who said that the defendant tried to lure them into meeting with him. Keith objected to this testimony because it was an inadmissible prior bad act in violation of <u>State v. Lyle</u>, 125 S.C. 406, 118 S.E. 803 (1923). Keith also contended the evidence should be excluded because it is more prejudicial than probative in violation of Rule 403, (SCRE).

Ground Two: The Trial court erred in denying Keith's motion for a Directed verdict because Keith did not committ[sic] any illegal act.

Supporting Facts: Cornelius Keith invited Tammy Atkinson over to his house and started to talk to her about him giving her funds because she lost a loved one. When Tammy Atkinson became uncomfortable she left his place. When Tammy Atkinson started to leave, Keith did not try to stop her. Keith did not touch or threaten the alleged victim in any manner and did not committ[sic] the unlawful act of kidnapping.

Ground Three: Trial counsel was ineffective for failing to ask the trial court judge to reconsider his sentence of 10 years.

Supporting Facts: Trial counsel was ineffective for failing to ask the trial court judge to reconsider his sentence of ten (10) years incarceration for kidnapping, when the victim was never held against her will and it was an error for the P.C.R. court to rule that Petitioner had effective Assistance of Counsel. Petitioner never touched Atkinson before, during or after she left his Apartment. (Trial transcript page 79, lines 2-18)

Ground Four: Trial Court erred in admitting evidence of notebook because it exceeding the scope of the search warrant.

Supporting Facts: The search warrant authorized the officers to seize a phone book and vase. While the authorities were searching for those items the[sic] opened a drawer and seized nine spiral notebooks. The notebooks did not say anything on them and would have to be opened up to provide evidence. Therefore, the notebooks should be excluded because they were not legitimately in plain view and proper fruits of the search.

(Petition).

### III.  SUMMARY JUDGMENT

As stated above, on July 16, 2009, the Respondent filed a return and memorandum of law in support of the motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court

 assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e);  Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case,

on which that party will bear the burden of proof at trial. <u>See</u> Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In <u>Celotex</u>, the Court held the defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the etitioner had failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. <u>Celotex,</u> 477 U.S. at 322-323.

## IV. STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, " '[a] federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case.'" <u>Humphries v. Ozmint</u>, 397 F.3d 206, 216 (4th Cir. 2005) (*quoting* <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000)). Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." *Id.* "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." <u>McHone v. Polk</u>, 392 F.3d 691, 719 (4th Cir. 2004).

## V. DISCUSSION AS TO PROCEDURAL BAR

### A. Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas Petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a Petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C.§ 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(I) there is either an absence of available State corrective process;

10

or

>(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

>(2)    An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

>(3)    A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

>(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a Petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.

The United States Supreme Court has consistently enforced the exhaustion requirement.

>The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal, See SCAR 207 and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR).

See S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a Petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the Petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). However, if Petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. Rose 455 U.S. at 515.

2.Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely

fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, supra, quoting Wainwright v. Syke s, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas Petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a Petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

### 3.  Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a Petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert.denied, 118 S.Ct. 102 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### 4. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a Petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A Petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a Petitioner demonstrates sufficient cause,

he must also show actual prejudice in order to excuse a default. <u>Murray v. Carrier</u>, 477 U.S. at 492. To show actual prejudice, the Petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. <u>United States v. Frady</u>, 456 U.S. 152 (1982).

In the case of <u>Kornahrens v. Evatt</u>, 66 F.3d 1350 (4th Cir. 1995), <u>cert. denied</u> 517 U.S.1171 (1996), 116 S.Ct. 1575 (1996), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. <u>See</u> <u>Karsten v. Kaiser Foundation Health Plan</u>, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## VI. ANALYSIS

The Respondent submits that petitioner has exhausted all available state remedies for these claims. Respondent contends that since petitioner did not exhaust some of his claims, they are technically exhausted but subject to procedural bars.

### GROUND ONE

In Ground One, Petitioner asserts that the trial court erred in admitting evidence of prior bad acts in violation of Rules 403 and 404(b) SCRE. Petitioner refers to the admission of testimony of two witnesses who testified that Petitioner also tried to meet with him shortly after one of their family members passed away.

Respondent argues this issue should be dismissed because Petitioner fails to state a claim

which federal habeas relief can be granted as federal habeas relief cannot rest upon a matter of state law. Respondent argues that Petitioner has not claimed any violation of his constitutional rights but only claims that certain evidence was inadmissable under the South Carolina Rules of Evidence. In his response in opposition, Petitioner argues that "the evidence was not admissible under <u>State v. Lyle</u> [citations omitted] or [R]ule 404(B), SCRE. . ." (Doc. #18).

A state court's decision on a question of state law is binding in federal court. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Thomas v. Davis</u>, 192 F.3d 445, 449 n. 1 (4th Cir. 1999). Therefore, it is recommended that Ground One be dismissed and Respondent's motion for summary judgement be granted with respect to his issue.

**<u>GROUND TWO</u>**

In Ground Two, Petitioner asserts the trial court erred in denying his motion for a directed verdict. Specifically, Petitioner asserts he did not try to stop the victim from leaving his apartment, he did not touch or threaten the alleged victim in any manner, and he did not commit the unlawful act of kidnapping.

Respondent argues the Court of Appeals found there was sufficient evidence to support a jury finding that Petitioner engaged in "inveigling" as cited in S.C. Code Ann. §16-3-910. Moreover, Respondent asserts Petitioner's claim is based on a violation of state law and goes to the sufficiency of the evidence. Respondent asserts that as the South Carolina Court of Appeals noted, there was sufficient evidence of Petitioner's guilt of the crime of kidnapping presented at trial such that he was not entitled to a direct verdict. Thus, Respondent argues that a federal court's review of such claims is "sharply limited." (Respondent's memorandum, p. 30).

In his response in opposition, Petitioner argues that "the kidnapping conviction was affirmed by the South Carolina Court of Appeals due to a woeful misinterpretation of the [S.C.] kidnapping statute which leads to absurd and unreasonable conclusions." (Doc. #18).

Since petitioner's claim is based on a violation of state law, it goes to the sufficiency of the evidence. Such a claim is cognizable on collateral review, however, a federal court's review of such claims is "sharply limited." Wilson v. Greene, 155 F.3d 396, 405 (4th Cir.1998), *cert. denied,* 525 U.S. 1012 (1998)(quoting Wright v. West, 505 U.S. 277, 296 (1992)); see also Evans-Smith v. Taylor, 19 F.3d 899, 905 (4th Cir.1994)["The standard is obviously rigorous."] "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." Wilson, 155 F.3d at 405-406 (*citing* Wright, 505 U.S. at 292). When reviewing such a claim, a federal court must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to the facts sought to be established; United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982); and when faced with all the evidence that allows conflicting inferences, this Court must presume that the jury resolved such conflicts in the state's favor. Jackson v. Virginia, 443 U.S. 307, 326 (1979). Therefore, petitioner is entitled to relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Wilson, 155 F.3d at 406 (*quoting* Jackson, 443 U.S. at 324)); *see also* George v. Angelone, 100 F.3d 353, 357 (4th Cir.1996); Bradley v. State, No. 04-1278, 2005 WL 3475770 at *6 (D.S.C. Apr. 5, 2005).

The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n. 16. Also, a federal reviewing court "must consider circumstantial as well as direct evidence, and allow the government

the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). Further, "under Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). See also Jackson, 443 U.S. at 318-19 ("[T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' ") (emphasis in original). Finally, when faced with evidence that allows conflicting inferences, this court must presume that the jury resolved such conflicts in the State's favor. Jackson, 443 U.S. at 326.

A directed verdict is appropriate only when the prosecution presents no evidence whatsoever of one or more elements of the charged offense. State v. McCluney, 361 S.C. 607, 606 S.E.2d 485, 486 (S.C.2004); State v. McLauren, 349 S.C. 488, 563 S.E.2d 346, 351 (S.C.2002). The trial court may not weigh the sufficiency of the evidence. McLauren, 563 S.E.2d at 351. In other words, if the prosecution has presented any evidence of the elements of the charged offense, the case will survive a motion for directed verdict.

Applying this criteria to this, petitioner was not entitled to a directed verdict on the charges against him because, when the direct and circumstantial evidence is viewed in the light most favorable to the prosecution, it cannot be said that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324.

South Carolina has defined the crime of kidnapping as "[w]hoever shall unlawfully seize, confine, inveigle, decoy, kidnap, abduct or carry away any other person by any means whatsoever without authority of law, except when a minor is seized or taken by his parent, is guilty of a felony and, upon conviction, must be imprisoned for a period not to exceed thirty years unless sentenced

for murder as provided in Section 16-3-20." S.C.Code Ann. §16-3-910.

In its order on direct appeal, the South Carolina Court of Appeals stated the following:

South Carolina's kidnapping statute requires proof of an unlawful act taking one of several alternative forms, including seizure, confinement, inveiglement, decoy, kidnapping, abduction, or carry away. State v. East, 353 S.C. 634, 637, 578 S.E.2d 748, 750 (Ct. App. 2003).

. . .

Under the interpretation of the statute set out in East, the act of inveigling or decoying alone satisfy the unlawful act requirement for proof of statutory kidnapping. Inveigling has been defines as "enticing cajoling, or tempting the victim, usually through some deceitful means such as false promises,", and decoy is defined as "to lure successfully." State v. Stokes, 345 S.C. 368, 373, 548 S.E.2d 202, 204 (2001) (citing United States v. Macklin, 671 F.2d 60, 66 (2d Cir. 1982) and New Webster's Dictionary and Thesaurus 250 (1993).

In this case, the State presented evidence that would allow a reasonable jury to find Keith inveigled or decoyed [A] into traveling to and entering his apartment. The State presented [A] testimony of the events surrounding her phone conversation and meeting with Keith and the testimony of two other witnesses who had received virtually identical phone calls. None of the women ever received any financial assistance. Also, the State presented the notebook found in Keith's apartment that contained information about several deceased men and their families. Thus, we find sufficient evidence was presented to support a finding of inveigling or decoy.

In addition to proving a defendant has violated the kidnapping statute, the State has the burden of proving that the statute was violated knowingly. State v. Jefferies, 316 S.C. 13, 19, 446 S.E.2d 427, 430-31 (1994). There was certainly some circumstantial evidence in the form of the testimony regarding previous phone calls to other women and the notebook found in Keith's home that could reasonably show Keith knew he was inveigling or decoying [A].

In response, Keith argues that [A] came to his home voluntarily. However, the fact that one is inveigled or decoyed into going somewhere negates, in legal contemplation, the voluntariness of his or her participation. Stokes, 345 S.C. at 373, 548 S.E.2d at 204. If Keith lured [A] to his home under the false pretense that she was to receive financial assistance, then her voluntariness would be negated. Furthermore, the fact that Keith locked the door after [A] entered his apartment casts doubt on his claim that she was there voluntarily.

In summary, Keith's alleged actions of luring [A] to his home under false pretenses

qualifies as inveiglement or decoy and negates her voluntariness. The inveiglement or decoy alone has been interpreted as meeting the necessary requirement of an unlawful act, and there was some circumstantial evidence to submit to the jury that could show Keith knowingly inveigled or decoyed [A]. Therefore, we find there was evidence to support the trial court's denial of Keith's directed verdict motion.

State v. Keith, Op. No. 2006-Up-301 (S.C. Ct. App. Filed June 30, 2006).

Based on a review of the evidence presented at trial, there was evidence presented from which a rational trier of fact could have found plaintiff guilty. There was testimony that Keith lured the victim to his apartment under the false pretense of giving her a check for financial assistance and then closed and locked the door once she was inside. While he did not prevent her from leaving, there was circumstantial evidence based on the evidence, including the testimony of two other witnesses, and the notebooks found in his apartment to find that Keith knew he was "inveigling or decoying" the victim. Further, evidence was presented that Petitioner used a false name when speaking with the victim and the other two female witnesses.

This Court's review of this claim is limited by the deferential standard of review set forth in 28 U.S.C. § 2254(d), as interpreted by the Supreme Court in Williams v. Taylor, supra; and Petitioner is entitled to relief only if no rational trier of fact could have found guilt beyond a reasonable doubt. Wilson, 155 F.3d at 406. Based upon a review of the evidence submitted at trial, the undersigned does not find that Petitioner has shown that "no rational trier of fact could have found him guilty." (Id. citing Jackson, supra.) The undersigned can also find no reversible error in the trial judge's refusal to grant a directed verdict on this claim based on this testimony and evidence, or in the state court's upholding this decision on appeal. 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]; Wilson, 155 F.3d at 406["[A] federal court reviewing the sufficiency of the evidence on

collateral attack must consider the evidence in the light most favorable to the prosecution and must presume that the jury resolved any conflicts over the historical facts in the [state's] favor."].

Based on a review of the evidence presented at trial, there was evidence presented from which the jury could have found plaintiff guilty. Thus, the state court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit. Therefore, it is recommended that the motion for summary judgment by respondent be granted with respect to this issue.

## GROUNDS THREE AND FOUR

Respondent argues that Grounds Three and Four are procedurally barred from federal habeas review. In Ground Three, Petitioner asserts trial counsel was ineffective for failing to ask the trial court to reconsider his sentence. Petitioner did not raise this claim in his Application for PCR.

In Ground Four, Petitioner argues that the trial court erred in admitting evidence of a notebook because it exceeded the scope of the search warrant. Respondent argues that although this issue was raised at trial, it was not appealed by Petitioner in his direct appeal.

As these issues were not raised in state court, the issues are procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, (1991).[3] As to the procedural default, the Petitioner has not shown sufficient cause and prejudice to excuse the default. In all cases in which a state prisoner has

---

[3] In South Carolina, a "direct appeal is the only avenue for trial related errors of a non-constitutional dimension." Kornahrens v. Evatt, 66 F.3d 1350, 1362 (4th Cir.1995) (*citing* Simmons v. State, 254 S.C. 417, 215 S.E.2d 883, 885 (1975)). If "a defendant fails to raise a trial related error on direct appeal, he has defaulted the claim." Id. at 1363.

defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, it is procedurally barred from consideration by this Court and should be dismissed. Id.; *see* 28 U.S.C. 2254; Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir.1990), *cert. denied,* 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."]; Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir.), *cert. denied*, 519 U.S. 1016 (1996) [In order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.]; Wainwright v. Sykes, supra; Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing *Murray v. Carrier,* 477 U.S. at 496); Sawyer v. Whitley, 505 U.S. 333, 348 (1992); Bolender v. Singletary, 898 F.Supp. 876, 881 (S.D.Fla.1995). Therefore, it is recommended that the Respondent's motion for summary judgment be granted with regards to this issues Ground Three and Ground Four.


## VII. CONCLUSION

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (docket entry #13) be GRANTED and the Petitioner's Petition for Writ of Habeas Corpus should be denied, and the petition dismissed without an evidentiary hearing.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 22, 2010
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**